# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19-cr-00502 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | JUDGE JOHN R. ADAMS |
| STEVEN AL-JAY HINDS, | ) ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) ) | |

On January 15, 2020, this Court conducted an initial sentencing hearing for Defendant Steven Al-Jay Hinds ("Hinds"). (Jan. 15, 2020 Hr'g Tr. 2:1-5, ECF No. 27.) During the hearing, issues surrounding relevant conduct and acceptance of responsibility arose requiring a continued sentencing hearing. (Jan. 15, 2020 Hr'g Tr. 11:11-15:12; 17:2-8, ECF No. 27; Jan. 22, 2020 Hr'g Tr. 55:3-21, ECF No. 29.) As established during both hearings, the issues currently before the Court are: 1) whether the government has established by a preponderance of the evidence that Hinds engaged in drug trafficking activity between June 18, 2019 and July 18, 2019, and, if so, whether it is relevant conduct for sentencing purposes; and 2) whether Hinds' denial of his involvement in drug trafficking activity between June 18, 2019 and July 18, 2019 affects the reduction of Hinds' offense level, as determined by the United States Sentencing Guidelines ("Sentencing Guidelines"), for acceptance of responsibility. (Jan. 15, 2020 Hr'g Tr. 11:11-15:12, ECF No. 27.)

Given the discussion contained herein, this Court finds that the government demonstrated, by the required preponderance of the evidence burden of proof, that Hinds was involved in drug trafficking activity between June 18, 2019 and July 18, 2019. Furthermore, this drug trafficking

activity is considered relevant conduct, as defined by the Sentencing Guidelines, when determining an appropriate sentence for Hinds. Finally, in this Court's view, Hinds' attempt to separate accepting responsibility for illegal drugs and weapons found during a search warrant while refusing to accept responsibility for the drug trafficking activity he engaged in after the search warrant was executed is not an acceptance of responsibility as contemplated by the Sentencing Guidelines. In sum, all relevant conduct, including uncharged relevant conduct, will be considered for Hinds' sentencing, and he shall not be awarded an offense level reduction for acceptance of responsibility.

## I. BACKGROUND

Because the Cleveland District Office of the Drug Enforcement Administration ("DEA") had probable cause to believe that Hinds was utilizing his cellphone to facilitate a conspiracy to traffic illegal drugs within the Northern District of Ohio, beginning in January 2019, Hinds' movement was monitored utilizing GPS pings of his cellphone. (Jan. 22, 2020 Hr'g Tr. 4:1-5:11; 6:2-4, ECF No. 29. *See also* Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 2 "Agent's Note"; Jan. 22, 2020 Hr'g Gov. Ex. 2 at ¶¶ 1-3.) According to the monitored GPS pings, Hinds travelled to Newcastle, Pennsylvania on at least two occasions in early 2019. (Jan. 22, 2020 Hr'g Tr. 6:2-19, ECF No. 29. *See also* Jan 22, 2020 Hr'g Gov. Ex. 1 at ¶ 2 "Agent's Note"; PSR ¶ 12, ECF No. 22.) On each trip, Hinds stopped in Newcastle, Pennsylvania for approximately thirty minutes, or less, and then immediately returned to Cleveland, Ohio. (Jan. 22, 2020 Hr'g Tr. 6:5-13, ECF No. 29. *See also* Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 2 "Agent's Note"; PSR ¶ 12, ECF No. 22.) Although the GPS pings could not precisely pinpoint Hinds' location within Newcastle, Pennsylvania, and because his trips were so short in-person surveillance was not possible, the GPS ping radius indicated that

Hinds was in the area of Newcastle, Pennsylvania on both short trips. (Jan. 22, 2020 Hr'g Tr. 6:14-7:2, ECF No. 29. *See also* Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 2 "Agent's Note".)

On June 18, 2019, DEA investigators executed a search warrant at 4251 East 126th Street, Cleveland, Ohio. (PSR ¶¶ 8-9, ECF No. 22. *See also* Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8 "Agent's Note".) The southwest bedroom of that residence was determined to be Hinds'. (PSR ¶ 10, ECF No. 22.) The following was found within Hinds' bedroom: a loaded Smith & Wesson .357 revolver, three baggies containing 29.75 grams of fentanyl and 4-ANPP mixture, one baggie containing 7.71 grams of cocaine, and a black shoulder bag which contained a loaded .22 Derringer firearm, a wallet with Hinds' United States Virgin Islands identification card, and Hinds' passport. (*Id. See also* Jan. 22, 2020 Hr'g Tr. 7:3-8:19, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8 "Agent's Note".) Prior to the June 18, 2019 search, DEA agents conducted surveillance of Hinds and observed Hinds wearing the black shoulder bag on multiple occasions, making the black shoulder bag that was located in the bedroom easily recognizable as Hinds' personal property. (Jan. 22, 2020 Hr'g Tr. 7:12-22, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8 "Agent's Note".) When DEA agents interviewed Hinds about the items found in the southwest bedroom – Hinds' bedroom – Hinds only admitted to owning the .22 caliber Derringer firearm. (PSR ¶ 11, ECF No. 22. *See also* Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8 "Agent's Note".)

Thereafter, on July 18, 2019, DEA agents were monitoring Hinds' location through GPS pings of his cellphone. (Jan. 22, 2020 Hr'g Tr. 9:16-20, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 2; PSR ¶ 12, ECF No. 22.) On that date, at approximately 2:10pm, the GPS pings placed Hinds in the area of Interstate 80 in Streetsboro, Ohio. (Jan. 22, 2020 Hr'g Tr. 9:21-25, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 2; PSR ¶ 12, ECF No. 22.) Because the DEA had been monitoring Hinds' location through GPS pings for some time, when Hinds' location pinged near the highway

in Streetsboro, Ohio, the DEA presumed Hinds was travelling to Newcastle, Pennsylvania as he had followed the same route on his previous trips to Newcastle. (Jan. 22, 2020 Hr'g Tr. 9:21-25, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 2.) Sure enough, according to GPS location pings of Hinds' cellphone, Hinds arrived in Newcastle, Pennsylvania at approximately 3:09pm and began travelling westbound, back towards Ohio, at approximately 3:24pm – meaning he had been in Newcastle, Pennsylvania for approximately 15 minutes total. (Jan. 22, 2020 Hr'g Tr. 10:1-2, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶¶ 4-5; PSR ¶¶ 13-14, ECF No 22.)

Given the short duration Hinds stayed in Newcastle that day, the DEA was unable to catch up to him before he began his return trip to Ohio. (Jan. 22, 2020 Hr'g Tr. 10:3-10, ECF No. 29.) However, the DEA had information that Hinds was travelling in a blue Chevy Impala, and was able to locate and follow the car Hinds was travelling in on its way westbound, back towards Ohio. (Jan. 22, 2020 Hr'g Tr. 10:11-25, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 3, 6; PSR ¶ 13, ECF No. 22.) Ultimately, at approximately 4:11pm, the Ohio State Highway Patrol ("OSHP") conducted a traffic stop of the blue Chevy Impala, in which Hinds was a passenger. (Jan. 22, 2020 Hr'g Tr. 11:1-25; 43:5-44:7, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8; PSR ¶ 15, ECF No. 22.) The OSHP officers immediately noticed marijuana residue and detected marijuana odor within the vehicle and, therefore, conducted a probable cause search of the vehicle. (Jan. 22, 2020 Hr'g Tr. 44:12-22, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8; PSR ¶ 15, ECF No. 22.)

During the probable cause search of the vehicle, officers found several bundles of U.S. currency, totaling $5600, bound with black rubber bands, along with marijuana residue, in the vehicle's center console. (Jan. 22, 2020 Hr'g Tr. 12:21-13:1; 13:19-14:2; 45:12-13; 46:22-47:7, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8; Jan. 22, 2020 Hr'g Gov. Ex. 3; Jan. 22, 202 Hr'g Gov. Ex. 4; PSR ¶ 16, ECF No. 22.) The officers also found the black shoulder bag,

previously identified as Hinds', within which more bundles of U.S. currency were found, totaling $2665, which were bound with the same black rubber bands as the cash bundles found in the center console. (Jan. 22, 2020 Hr'g Tr. 12:1-6; 12:13-17; 45:9-12, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8; Jan. 22, 2020 Hr'g Gov. Ex. 3; Jan. 22, 2020 Hr'g Gov. Ex. 4; PSR ¶ 16, ECF No. 22.) The black shoulder bag also contained a plastic baggie holding more black rubber bands, the same rubber bands that bound the currency found in the center console of the vehicle and the currency found in Hinds' black shoulder bag. (Jan. 22, 2020 Hr'g Tr. 12:18-20, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8.) Finally, marijuana residue was also located in the vehicle's trunk. (Jan 22, 2020, Hr'g Tr. 13:19-14:2; 46:22-47:7, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8.) Hinds admitted to the OSHP officers that the money located in the black shoulder bag belonged to him as he had earned it from a painting job, and that some of the money located in the vehicle's center console also belonged to him, without specifying the amount that was his or where it came from. (Jan. 22, 2020 Hr'g Tr. 13:2-18; 45:14-46:8; 52:7-19, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 8; PSR ¶ 16, ECF No. 22.)

Hinds' cellphones were also seized and ultimately searched. (Jan. 22, 2020 Hr'g Tr. 9:1-6; 14:3-5; 14:11-19, ECF No. 29; Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 10.) Hinds' phone contained photographs of small blue pills with an "M" marking – the same size, color, and containing the same marking as the fentanyl and 4-ANPP pills found in Hinds' bedroom during the June 18, 2019 search. (Jan. 22, 2020 Hr'g Tr. 9:7-12; 14:3-8; 37:7-23, ECF No. 29.) His phone also contained contact information for an individual in Mexico and photos of wire transfer receipts to individuals in Mexico. (*Id*. at 14:17-16:24; 37:24-39:11.)

In response to questioning, Hinds stated that he had travelled to Newcastle, Pennsylvania to visit family. (*Id.* at 18:2-4; 45:19-21; 46:9-11.) Hinds was taken into Customs and Border Patrol

custody and it was confirmed that Hinds, a citizen of Jamaica, is in the United States illegally as he has overstayed a visa. (Jan. 22, 2020 Hr'g Gov. Ex. 1 at ¶ 11.)

On August 21, 2019, Hinds was indicted with charges of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and Possession of a Firearm by an Alien Illegally in the United States in violation of 18 U.S.C. § 922(g)(5). (*See generally* Indictment, ECF No. 8.) On October 7, 2019, Hinds pled guilty to these charges. (*See* Min. of Proceedings Oct. 7, 2019.) On January 15, 2020, this Court conducted an initial sentencing hearing for Hinds, during which Hinds asserted that the charges he faced were simply because he was in "the wrong place at the wrong time" while at the same time maintaining that he accepted responsibility for the illegal drugs and weapons found in his bedroom on June 18, 2019. (Jan. 15, 2020 Hr'g Tr. 2:1-5; 11:18-12:18, ECF No. 27.) Hinds also denied involvement in drug trafficking activities after the June 18, 2019 search warrant execution. (Jan. 15, 2020 Hr'g Tr. 12:10-18, ECF No. 27; Jan. 22, 2020 Hr'g Tr. 19:20-21:11, ECF No. 29.)

## II. ANALYSIS

### 1. Relevant Conduct

When sentencing a defendant convicted of drug trafficking offenses, including possession with the intent to distribute, this Court is not limited to considering only the exact drug trafficking activity for which the defendant was indicted – relevant conduct may also be considered. *United States v. Jones*, 784 F. App'x 358, 362 (6th Cir. 2019). *See also* U.S.S.G. § 1B1.3 (2018). For specific offenses, including possession with the intent to distribute, relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (2018).

The Sentencing Guidelines set forth that "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, or similar modus operandi." U.S.S.G. § 1B1.3 n.5(B)(i) (2018). In turn, "[o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 n.5(B)(ii) (2018). Courts should consider "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses" when determining if a defendant's offenses are part of the same course of conduct. *Id.*

For a defendant charged with possession with the intent to distribute, when determining whether that defendant's activities are part of a common scheme or plan, or part of the same course of conduct pursuant to these definitions, and, therefore, relevant conduct, "separate incidents of possession with the intent to distribute can be included within the scope of relevant conduct." *United States v. Gill*, 348 F.3d 147, 153-55 (6th Cir. 2003). In considering whether a defendant's actions are relevant conduct pursuant to these standards and definitions, there is no requirement that the defendant is, in fact, convicted of multiple counts in order for the defendant's various activities to be considered relevant conduct. U.S.S.G. § 1B1.3 n.5(A) (2018). In fact, a court "has wide discretion in what it may consider as relevant conduct," including the consideration of uncharged conduct. *United States v. Four Pillars Enter. Co.*, 253 F. App'x 502, 510 (6th Cir. 2007). *See also United States v. Miller*, 910 F.2d 1321, 1327 (6th Cir. 1990) (holding that the sentencing guidelines "require[] consideration of uncharged relevant conduct").

Finally, "[t]he existence of relevant conduct is determined at sentencing by a preponderance of the evidence." *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000). In truth, a "defendant suffers no constitutional violation when district courts find facts relevant to sentencing by a preponderance of the evidence." *Four Pillars*, 253 F. App'x at 506. *See also United States v. Byrd*, Nos. 91-6226, 91-6227, 1992 U.S. App. LEXIS 7156 at *5 (6th Cir. Apr. 7, 1992) ("The government bears the burden of proving conduct relevant to sentencing under the United States Guidelines by a preponderance of the evidence.")

Given this framework, this Court finds that Hinds' activities between June 18, 2019 and July 18, 2019 are relevant conduct for sentencing purposes. More specifically, Hinds' actions, both before June 18, 2019 and between June 18, 2019 and July 18, 2019 are part of the same course of conduct as his actions are all sufficiently related to each other warranting the conclusion that Hinds engaged in a series of related offenses. Hinds traveled, on at least two occasions before June 18, 2019 and, for a third time, on July 18, 2019 to Newcastle, Pennsylvania. Although Hinds alleges that he travelled to Newcastle for the purpose of visiting family, despite travelling approximately one hour and thirty minutes to Newcastle from Cleveland, Hinds was in Newcastle for less than thirty minutes on each trip. Furthermore, Hinds has failed to provide any information about the family he was visiting to support this claim – not a name, not an address, not even contact information. As all these trips were similar, and repeated regularly within a six-month period, this Court can only conclude that Hinds' actions were part of the same course of conduct.

Of course, this Court recognizes that there is no direct evidence that Hinds engaged in drug trafficking activity on each of those trips – no government agent witnessed an exchange of drugs and money on any of Hinds' trips to Newcastle, Pennsylvania. However, it is telling that the trips were very short in duration, that Hinds has failed to identify the family he was visiting, that Hinds

had a significant amount of cash on him at the time of his arrest despite his assertions that he was a painter making between zero and five hundred dollars per week, which was inconsistent income because he didn't work every week, and despite the fact that his cash was bundled in the same black rubber bands as cash he declined ownership of in the vehicle on July 18, 2019. Once again, Hinds failed to provide any information – not dates, not locations, not contact information, nothing – about the painting jobs he allegedly completed to earn the money in his possession. Combine this information with the fact that Hinds' phone contained contact information for an individual in Mexico and photos of wire transfer receipts to individuals in Mexico and the evidence paints a specific picture of drug trafficking.

Although each of these facts, individually, could be deemed innocent behavior, when combined, the preponderance of the evidence provides that Hinds was involved in drug trafficking activity before June 18, 2019, and despite having his bedroom searched where weapons and illegal drugs were seized, Hinds continued his drug trafficking activity after June 18, 2019 until the date of his arrest. Despite Hinds avoiding additional charges related to his activities between June 18, 2019 and July 18, 2019, this uncharged drug trafficking activity is certainly relevant conduct for this Court to consider when determining that appropriate sentence to impose upon Hinds.

2. Acceptance of Responsibility

Pursuant to the Sentencing Guidelines, a court may grant a two-level reduction to a defendant's offense level if, by a preponderance of the evidence, "the defendant demonstrates acceptance of responsibility for his offense." *United States v. Griffin*, 656 F. App'x 138, 143 (6th Cir. 2016); U.S.S.G. § 3E1.1(a) (2018). Although "a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain" the two-level reduction, the defendant must still truthfully admit "the conduct comprising the offense(s) of

conviction" and either truthfully admit, or at least not falsely deny "any additional relevant conduct for which the defendant is accountable." U.S.S.G. § 3E1.1 n.1(A) (2018). In fact, "[a] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 n.1(A) (2018).

A defendant's guilty plea does not automatically entitle him the acceptance of responsibility reduction "as a matter of right." *United States v. Wymer*, 654 F. App'x 735, 757 (6th Cir. 2016). Particularly when a defendant minimizes his conduct – in which case a court may withhold the reduction for acceptance of responsibility. *Griffin*, 656 F. App'x at 144.

Accordingly, this Court finds that Hinds' denying involvement in drug trafficking activity between June 18, 2019 and July 18, 2019 is a false denial of relevant conduct for which Hinds is accountable. As previously discussed, the government has proven, by a preponderance of the evidence, that Hinds was involved in drug trafficking activity between June 18, 2019 and July 18, 2019, even though no additional charges were filed against him. Hinds' responsibility, in turn, was to demonstrate by a preponderance of the evidence that he had, in fact, accepted responsibility for his offense and not falsely deny additional relevant conduct in which he engaged. In telling this Court that he viewed his offense as a simple wrong-place-wrong-time situation, Hinds failed to truthfully admit the relevant conduct he continued to engage in even after weapons and drugs were seized from his bedroom. Despite pleading guilty, Hinds now attempts to minimize his involvement in drug trafficking. Therefore, Hinds will not be awarded a reduction in his offense level as this Court finds that Hinds has not demonstrated that he has accepted responsibility by a preponderance of the evidence.

**III. CONCLUSION**

Therefore, for all the reasons enumerated throughout this memorandum and those stated on the record during Hinds' two previously held sentencing hearings, this Court finds, by a preponderance of the evidence, that Hinds was involved in drug trafficking activities between June 18, 2019 and July 18, 2019. These activities, pursuant to the United States Sentencing Guidelines, are considered relevant conduct for the purpose of sentencing Hinds. Finally, Hinds has failed to demonstrate, by a preponderance of the evidence, that he accepted responsibility for his offense and the conduct relevant to his offense and, therefore, he shall not be awarded an offense level reduction for acceptance of responsibility.

IT IS SO ORDERED.

DATE: March 30, 2020
/s/ John R. Adams
Judge John R. Adams
UNITED STATES DISTRICT COURT